RAMÓN A. PAGÁN, OSB No. 103072
The Law Office of Ramón A. Pagán, LLC
126 NE 2nd Avenue
Hillsboro, Oregon 97124
Telephone: (971) 270-0421
Facsimile: (866) 431-9948
Email: rpagan@outlook.com

Attorney for Blake David Hampe

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

|  |  |
|---|---|
| UNITED STATES of AMERICA,<br>Plaintiff,<br><br>v.<br><br>BLAKE DAVID HAMPE,<br>Defendant.<br><br>_____ | Case No. CR-11-195 (HZ)<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO TERMINATE SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(e)** |

Blake David Hampe ("**Hampe**"), through counsel, Ramón A. Pagán, respectfully submits this Memorandum in Support of his Motion to Terminate Supervised Release Pursuant to 18 U.S.C. § 3583(e). The Court has wide discretion in deciding a motion to terminate supervised release, and, based upon the relevant factors and Hampe's conduct, this Court should grant his motion.

## Legal and Factual Background

On or about July 27, 2007, in the District of Maine, Hampe pleaded guilty, without a plea agreement, to a one count indictment charging him with possession of child pornography in

violation of 18 U.S.C. § 2252A(a)(5)(b) and (b)(2). District Judge Woodcock sentenced Hampe to 41 months imprisonment with 10 years supervised release. It should be noted that in the plea offer that was extended to Hampe, the government indicated that a 10 year supervised release sentence was "common" for the District of Maine in cases of child pornography.

Hampe served the majority of his sentence in Seagoville, Texas. Hampe was released after calculations of good time and credit for time served on May 13, 2010. On May 4, 2011, Hampe's case was officially transferred to this Court's jurisdiction, as well as his supervision.

It has now been five years since Hampe was released into the custody of the Probation Department. During those five years, Hampe has not had any violations, has completed all of the requirements of his probation and treatment programs, and he has excelled at becoming a better person. Last year, the Probation Office was contacted to discuss whether or not they would agree with a motion to terminate the supervised release. At that time, the Probation Office stated that Hampe still needed to do two things: (a) complete his full disclosure polygraph, and (b) complete his group therapy sessions. Hampe has done both. He successfully passed his full disclosure polygraph, and he is now in the "aftercare" portion of group therapy, reserved for those supervisees who complete their general group therapy. Despite this, the Probation Office now states that it will not agree with this motion because they believe Hampe should continue with "aftercare" therapy.

As noted in his Affidavit, Hampe not only continued with treatment and his overall supervision, but he sought vocational training on his own, has been an exemplary student, and he is now only being held back by the restrictions of supervision which no longer serve any justifiable purpose.

Further, as noted in the studies provided to the Court, there is simply no reason to believe someone like Hampe requires any more restrictive supervision, particularly since he has now exceeded five years of supervision with incident. He is not a risk for recidivism, any more than any other member of the general population. Thus, because he has now served the statutory minimum for his supervised release, and he has shown exceptional progress, his supervised release should be terminated.

### Legal Argument

The Court has discretion, pursuant to 18 U.S.C. § 3583(e)(1), to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." When doing so, the Court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(c), (a)(4), (a)(5), (a)(6) and (a)(7). 18 U.S.C. § 3583(e). Those factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) deterrence; (3) protection of the public; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment; (5) the sentence and sentencing range established for the category of the defendant; (6) any pertinent policy statement by the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (8) the need to provide restitution to any victims of the offense. Regarding this analysis, the Ninth Circuit has stated: "[18 U.S.C. § 3583(e)] provides that . . . a court may terminate a term of supervised release "if it is satisfied that such

action is warranted by the conduct of the defendant released and the interest of justice . . . The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *United States v. Emmett,* 749 F.3d 817, 819 (9th Cir. 2014). Here, an analysis of all of these factors should weigh heavily in favor of terminating Hampe's supervised release.

The Nature and Circumstances of the Offense and Characteristics of the Defendant

This case was relatively simple: Hampe was found with six images and six videos that were found to contain child pornography. Hampe admitted the conduct to law enforcement, showed remorse, and pleaded guilty. Hampe was never considered a producer or distributor of child pornography, and he had no criminal convictions. Also, as noted in his psychological evaluations that were filed *under seal*, Hampe's possession, in this instance, was related to chats he was having with other adults about prospective sexual encounters. The purpose of the images and videos was for the people he may have ended up meeting to show their fetish to him. He did not actively seek out child pornography for his own collection purposes.

As noted in the extensive evaluations of Hampe, as well as the PSR, Hampe was a victim of abuse at a young age and he had problems with drug addiction throughout his life. He was diagnosed with PTSD and pyroluria. Nevertheless, Hampe had an extensive employment history, including working with disabled adults as a caretaker, and teaching music to autistic children. After his release, Hampe worked hard to complete any treatment required by the Probation Office, as well as independent treatment by psychologists. Hampe then entered into Mount Hood Community College to pursue a career in creating video games. He did so knowing

that the Probation Office would have to seriously monitor his work, as it would all be on computers. Even with such restrictions, Hampe never violated his probation terms, and he excelled in school, leaving with a strong GPA.

Need for Deterrence

One of the major issues with child pornography cases is the mislaid public perception that sex offenders, of all sex crimes, are somehow more likely than the rest of the population to re-commit other sex crimes. Attached is a study from Dr. Hanson, the creator of the Static-99 risk assessment tool for sex offenders, showing that if a sex offender does not re-commit a sex crime within the first five years after release, the risk for re-committing a sex crime drops to the same levels as the general population. Indeed, for low risk offenders, such as Hampe, the risk of re-offending was between 1-5%. From the report:

> This study found that sexual offenders' risk of serious and persistent sexual crime decreased the longer they had been sex offence-free in the community. This pattern was particularly evident for high risk sexual offenders, whose yearly recidivism rates declined from approximately 7% during the first calendar year, to less than 1% per year when they have been offence-free for 10 years or more. **Consequently, intervention and monitoring resources should be concentrated in the first few years after release, with diminishing attention and concern for individuals who remain offence-free for substantial periods of time**.

Hanson, et al., *High Risk Offenders May Not Be High Risk Forever*, 2013, pg. 12 (emphasis added). Hampe is a low-risk offender, and, thus, his monitoring and intervention should be adjusted accordingly. We submit that the USPO is applying a blanket policy of continued supervision on Hampe because of the nature of his crime, regardless of his actual risk factor and whether such supervision is warranted in his particular case. Nevertheless, this Court can see plainly that Hampe has now been crime-free since this case was initiated, and he has

been on supervision for five years without incident. There is simply no need to supervise Hampe as a risk for recidivism and there is no deterrence value to continued supervision.

The Need to Protect the Public

In the same vein as the discussion regarding deterrence, Hampe presents no threat to the public, and has demonstrated as much. He has no criminal history, his criminal conduct was, while culpable, minimal considering the heartland cases of child pornography the courts deal with, and he has had no instances of any violations while on supervised release. Considering that he was a low-risk offender to begin with, there is no credible argument that he is a continued threat to the public without supervision.

The Need to Provide The Defendant with Vocational or Educational Training, or Medical/Psychological treatment

Ironically, the USPO's supervision has only acted as a barrier to Hampe's continued education and vocational training. As noted in Hampe's Affidavit, his probation officer once threatened to speak with all of his professors personally about his conviction and her need to monitor his computer use. In order to even get Hampe into the program at Mount Hood, Hampe needed to have clearance from the USPO, which was not easily given. Regarding medical or psychological treatment, the USPO has only required Hampe to engage in group therapy sessions for sex offenders. However, Hampe sought out and worked on his own to acquire psychological treatment from experts, and has continued to seek such treatment to this day.

The Sentencing Range

Hampe was sentenced to the guidelines range of imprisonment, but was given five years more than the statutory minimum for his supervised release. The reason for those extra five

years, according to the AUSA on the matter was that it was the "common" supervised release sentence in that district. It was not specific to any particular risk assessment or issues associated with Hampe. As the Court is aware, the statutory minimum for Hampe's crime is five years.

Any Pertinent Policy Statements by the USSC

The USSC does include policy statements regarding revocation of supervised release or probation (Chapter 7, USSG), but does not discuss early termination.

The Need to Avoid Disparate Sentences Among Similarly Situated Offenders

The issue here is not whether Hampe is receiving any disparate sentence, but, rather, whether after having received the "common" ten year supervised release sentence, he should now be relieved of that burden based on his conduct. It should be noted that the statute allows for early termination of *any* supervised release term after one year, including those supervised release terms that are mandated, by statute, to be longer than one year.

The Need to Provide Restitition

No Restitution was requested in this particular case.

## Conclusion

Hampe has not only served his time and lived up to his requirements under supervision, he has also exceeded expectations and successfully built a new life for himself. For him to be in a position to succeed, he needs the freedom to pursue his career without any further burden of enhanced monitoring and consent by the USPO. He has demonstrated that he is no risk to the public, he is not an elevated risk to re-offend, and supervision is simply not benefitting him any further. At this point, the USPO has him in a transitional program where he will only be seen once a month by his therapist. He has no other supervision requirements to fulfill. It is time for

him to be able to move on with whatever life he can create knowing he will have this conviction on his record for the rest of his life.   He respectfully requests that this Court terminate his supervised release.

DATED this 29th day of May, 2015.

                          THE LAW OFFICE OF RAMON A. PAGAN
                          Attorney for Petitioner

                         By:    s/RAP
                            Ramón A. Pagán, OSB No. 103072
                            126 NE 2nd Avenue
                            Hillsboro, Oregon 97124
                            Telephone:  (971) 270-0421
                            Facsimile:  (866) 431-9948