RAMÓN A. PAGÁN, OSB No. 103072
The Law Office of Ramón A. Pagán, LLC
126 NE 2nd Avenue
Hillsboro, Oregon 97124
Telephone: (971) 270-0421
Facsimile: (866) 431-9948
Email: rpagan@outlook.com

Attorney for Blake David Hampe

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| UNITED STATES of AMERICA,<br>Plaintiff,<br><br>versus<br><br>BLAKE DAVID HAMPE,<br>Defendant.<br><br>_____ | Case No. CR-11-195 (HZ)<br><br>**AFFIDAVIT OF BLAKE DAVID HAMPE IN SUPPORT OF MOTION TO TERMINATE SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(e)** |

BLAKE DAVID HAMPE, being duly sworn, hereby states and avers under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I, Blake David Hampe, am the defendant in the above-referenced action. I respectfully submit this affidavit in support of the Motion to Terminate Supervised Release pursuant to 18 U.S.C. § 3583(e).

2. On or about July 27, 2007, I pleaded guilty to a one count indictment charging me with a violation 18 U.S.C. § 2252A(a)(5)(b) and (b)(2), or, put simply, possession of child pornography.

3. The facts of my case are, in a sense, simple, but the background to the facts leading up to my crime are complicated. To avoid redundancy, I respectfully refer the Court to the Pre-Sentence Report (PSR) and other documentation provided to the Court, *under seal*, for a full accounting of the allegations and background facts.

4. Judge Woodcock, of the District of Maine, accepted my guilty plea and sentenced me to 41 months imprisonment, with 10 years supervised release.

5. I spent the majority of my prison sentence in Seagoville FCI, Texas. While in Seagoville, I worked multiple jobs, including kitchen duty, and attended drug and alcohol classes (not formal programs). My stay was generally incident free.

6. On May 13, 2010, I was released from FCI custody and was transferred to a halfway house in Eugene, Oregon. On July 20, 2010, I was fully released from custody and began my supervised release term. At or about May 2011, my supervised release was officially transferred to this Court's jurisdiction.

7. Initially, I was assigned to probation officer (PO) John Siebenaler. I began living with my mother in Lake Oswego, and tried to find work. I found jobs pet-sitting for an organization called "Cats in the City Too." I was employed there for approximately a year, starting in October 2010.

8. In or about 2011, I was re-assigned to PO Jeweley Hirsch. Ms. Hirsch was aware that I was working for the pet-sitting service, and, initially, had no problems with that arrangement.

9. However, in or about October and November of 2011, I failed polygraph examinations. One of the polygraph examinations was deemed inconclusive, which is considered a fail, and I believe the other was failed because the polygrapher perceived intentional manipulation of the polygraph by me.

10. Following those polygraphs, Ms. Hirsch was very concerned and decided that I could not continue my employment with the pet-sitting service without notifying the individuals of my conviction and restricting my access to computers. As could be imagined, such an arrangement would be impossible, and, thus, I decided to stop working for any pet-sitting service.

11. At the time, my mother and I had begun planning to start our own pet-sitting service, but again believed that it would impossible to do so with Ms. Hirsch or any other PO warning potential customers about my conviction.

12. My relationship with Ms. Hirsch, at that time, was at a low-point because of the polygraphs. Ms. Hirsch had conducted random walk-arounds of my home due to the polygraphs, but no violations were found. I sought the assistance of counsel, Mr. Pagan – who was then with Janet Hoffman – and began working on ways to repair my relationship with Ms. Hirsch and the USPO.

13. To that effort I engaged Dr. Bolstad to perform a psycho-sexual evaluation, a report of which is included *under seal* with these motion papers.

14. After much effort with my counsel, including further polygraph examinations, I convinced Ms. Hirsch to allow me to attend Mount Hood Community College in the summer of 2012 for the purpose of studying Computer Game Development. At first, Ms. Hirsch wanted to speak with each of my professors about my conviction and wanted to speak with the school about what restrictions would be placed on my computer use.

15. As I had no personal computer at the time, any computer use was at the school, which is monitored and restricted without any other third party requests. Thus, Ms. Hirsch permitted me to continue my studies. Ms. Hirsch also decided not to contact my professors personally, I believe, and I was very grateful for that.

16. I studied hard despite many difficulties being on supervised release created for me, such as use of computers generally. In the computer game development area, one must purchase games and use them for classes. Doing so was, at times, difficult due to my restrictions on supervised release, as I could not use programs otherwise available to the public to purchase games easily and for less money. It was also necessary to work on detailed, difficult projects on a computer for my assignments and exams. Throughout my studies, I had to ensure that I was working within the rules of supervised release, and I did so to the best of my ability. Despite having to work on computers for 2 years, I never once violated any restrictions Ms. Hirsch placed on me, and I believe I was as cooperative as I could be throughout that period.

17. I also continued to attend my group therapy sessions, passed my urine analyses, and submitted to any polygraph examinations I was asked to. I further paid for my own

computer monitoring services, which, itself, created a financial difficulty for me. I had to pay for my own polygraphs and any other services the USPO requested of me. I did all of these things without creating any unnecessary friction with the USPO.

18. I have submitted to random searches of my home throughout my supervision, all without incident.

19. I graduated from Mount Hood Community College this past spring, in 2014, with a 3.14 GPA. I then enrolled in further classes at Portland Community College with a focus on Audio Engineering, to assist me with game and movie audio production, something I became interested in during my studies at Mount Hood.

20. In May, 2014, I completed a "full disclosure" polygraph, and have completed the bulk of my group therapy work. I transitioned into an "aftercare" program with my group sessions, and have been in those sessions now since the fall of 2014. I was originally told the aftercare would last only six months, and to that end I have completed all assignments for the program. However, I was recently told that the program would continue on a more limited basis – as few as one session per month – for the foreseeable future.

21. I have never had any disciplinary issues, have served my time, and have been an exemplary supervisee with Ms. Hirsch.

22. I want nothing more than to return to society, to contribute to our economy, to feel as though I have some ability to move beyond this aberration in my life and start feeling like I have some autonomy. I say I want to return to society because where I am now cannot be considered "society". My house is randomly visited with a walk-around

search; I cannot own or use computers without severe restrictions and monitoring; I cannot apply for jobs in my industry because the USPO requires that they speak with my potential employers to discuss restrictions and monitoring (specifically, that any computer I come in contact with at any employer's office would likely be monitored). No job applicant can hope to be gainfully employed under such circumstances.

23. I will always have to disclose my conviction when asked, and I will have to report as a sex offender, which I have done dutifully. I have been supervised for nearly five years now without incident, and have been able to persevere and challenge myself to achieve in school despite having a fear of my probation officer speaking with my professors. I cannot adequately articulate how stressful my life is knowing that, at any moment, the USPO may choose to contact those with whom I work or study to inform them of my past and warn them about how I might be a risk to society or their organization. I believe the evaluation by Dr. Bolstad more articulately states how these conditions affect my psyche, and I would request that the Court consider it when making this decision.

24. I know that the criminal justice system is beginning to rethink the recidivism risk when it comes to sex offenders. I know that intelligent, conscientious people have been studying this issue for years, trying to determine whether the legislation and attitudes of our courts are in-step with the actual risk sex offenders pose. My attorney has included some literature on the subject for the Court, and I would ask that it be considered when making this decision.

25. But I assure the Court, I am not a risk for future offense. There is nothing that anyone could say to me or offer me that could possibly make me take the risk of re-entering the criminal justice system. I just want to get a job and try to have some semblance of a normal life. I know that will never be possible because of my conviction, but I hope that I may have a little bit more freedom to be accepted or rejected on my own, rather than at the warnings and restrictions of well-meaning probation officers who are, by their very nature, bound to ensure that those under their supervision are properly monitored.

26. I hope the Court understands that I do not begrudge Ms. Hirsch for the work and supervision she has performed. I understand perfectly that everything she has done was by the book, so to speak, and in perfect accord with her duties. I simply ask that the Court consider whether, after all I have been through, it may see fit to relieve me of this burden, knowing well that I will always bear an albatross as a convicted sex-offender, and let me try to live as normal a life as anyone could under the circumstances.

Dated: May 29, 2015

s/ Blake David Hampe

_____
Blake David Hampe